# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **LEWIS CLAY SHULER, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **NO. 3:18-cv-01223** |
| ) | |
| **DARON HALL, et al.,** ) | **JUDGE CAMPBELL** |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Plaintiff Lewis Clay Shuler, Jr., a pretrial detainee in the custody of the Davidson County Sheriff's Office in Nashville, Tennessee, has filed a *pro se* complaint under 42 U.S.C. § 1983. (Doc. No. 1.) The complaint is before the Court for initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A, and 42 U.S.C. § 1997e.

## I. PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915A, the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. The initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

## II.     Section 1983 Standard

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

## III.    Analysis

Plaintiff's factual allegations are specific to the individual defendants he names, against whom he asserts a laundry list of claims. The Court will review these allegations and claims in the order that they are presented in the complaint.

The first two named Defendants, Correct Care Solutions (CCS) and Daron Hall, are sued in both their official and individual capacities. (Doc. No. 1 at 2.) Furthermore, buried in his allegations against one of the remaining 34 Defendants is Plaintiff's statement that "[a]ll Defendants are being sued individually and in their official capacity." (*Id.* at 13.) However, Plaintiff's allegations do not suggest that any individual's alleged misconduct was undertaken pursuant to a municipal policy or custom, as necessary to support a claim against municipal officials in their official capacity. *See Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245–46 (6th Cir. 1989) (official-capacity claim against county official is claim against the county itself, requiring plaintiff to show that his injuries resulted from policy or custom attributable to county). Accordingly, all official-capacity claims will be dismissed, and the Court will address below the individual claims against the named Defendants.

Plaintiff's allegations generally fall within two broad categories: (1) complaints about the conditions of his confinement and retaliation, and (2) complaints about the denial of proper medical care.[1]

---

[1]     On December 6, 2018, the Court received a letter from Plaintiff in which he alleges that on November 24, 2018, he was attacked and restrained by Corporal Timothy Sturgeon (who is not a named Defendant), and subsequently kicked while he was down by Defendant Dial and Sergeant Chadwick Myatt (who is not a named Defendant). (Doc. No. 4 at 1–3.) Attached to this letter is a copy of the grievance Plaintiff filed on November 28, 2018, complaining about the attack. (*Id.* at 6.) The Court declines to construe this letter as an attempt to amend the complaint in this case. Aside from Plaintiff's apparent failure to properly exhaust available appellate grievance procedures before mailing his letter, the combination of claims arising from this incident against

## A. Conditions of Confinement; Retaliation

The complaint first presents allegations involving the conditions of Plaintiff's confinement. The proper inquiry with regard to a pretrial detainee's conditions-of-confinement claims is "whether those conditions amount to punishment of the detainee, for, under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Of course, even if it may reasonably be inferred that the purpose of the alleged governmental action is punishment, "[t]here is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 & n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

### 1. CCS and Sheriff Daron Hall

Plaintiff fails to make any allegation of fact against these Defendants. He seeks an injunction ordering the Sheriff's Office and CCS to send him to "San-Antonio Hospital or Saint Thomas Hospital," and an award of damages against them. (Doc. No. 1 at 15.) However, no viable claim to such relief may be stated against Defendant Hall without an allegation of his personal involvement in the alleged unconstitutional activity, *see Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) ("proof of personal involvement is required for a supervisor to incur personal liability" under Section 1983), or of a constitutional violation resulting from his execution of a Sheriff's Office policy. *See Leach*, 891 F.2d at 1245–46. Likewise, CCS may not be held liable in the absence of an allegation that Plaintiff's harm resulted from the execution of a policy or custom of the corporation. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (finding medical services contractor subject to liability under § 1983 only if deprivation of

---

new parties with his unrelated claims against existing Defendants would appear to constitute misjoinder under Rules 18 and 20 of the Federal Rules of Civil Procedure.

rights caused by corporate policy). As the complaint contains no such allegations, these Defendants will be dismissed.

### 2. Chief Tony Wilkes

Plaintiff alleges that Chief Tony Wilkes failed to respond to numerous grievances Plaintiff filed concerning unspecified incidents of Sheriff's Office staff mistreating him. (Doc. No. 1 at 7.) Such allegations fail to state a claim because the Constitution does not guarantee an effective prison grievance procedure. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing, e.g., *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)).

### 3. Beth Gentry

Plaintiff alleges that on June 20, 2017, Beth Gentry classified him as a maximum-security inmate "without incident" because he was charged with criminal homicide, and placed him in solitary confinement because he complained of chest pain. (Doc. No. 1 at 7.) He alleges that these actions constituted cruel and unusual punishment, in violation of the Eighth Amendment. (*Id.*) "But the Eighth Amendment applies only to those individuals who have been tried, convicted, and sentenced." *Richko v. Wayne Cnty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016). "Pretrial detainees . . . on the other hand, are protected [from punishment] by the Fourteenth Amendment's Due Process Clause." *Id.*

It appears that Plaintiff was classified as a maximum-security inmate upon being booked into the jail, rather than having his security classification subsequently raised. (*See* Doc. No. 2 at 5 (showing assessment of booking fee in June 2017).) However, even if this classification were raised without any precipitating incident, "an increase in security classification . . . does not constitute an atypical and significant hardship" sufficient to require procedural due process prior to the reclassification. *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005); *see also Ward v.*

*Wilcher*, No. CV418-119, 2018 WL 6238083, at *2 (S.D. Ga. Oct. 17, 2018) ("A change in the level of custody within a prison system does not infringe upon or implicate a liberty interest within the meaning of the Due Process Clause, for the States typically have not created such a liberty interest for prisoners."). Moreover, while "[p]retrial detainees have a substantive due process right against restrictions that amount to punishment," *United States v. Salerno*, 481 U.S. 739, 746 (1987), segregating a pretrial detainee for reasons related to legitimate governmental objectives does not amount to punishment in violation of the detainee's due process rights. *Martucci v. Johnson*, 944 F.2d 291, 294 (6th Cir. 1991). Plaintiff makes the bare allegation that Defendant Gentry put him in solitary confinement due to his complaint of chest pain, but there are no additional allegations concerning the length of time he spent in such segregation or suggesting that the segregation was punitive as opposed to administrative or medical. *See Ward*, 2018 WL 6238083, at *3 (stating that court is not required to infer punitive motive from mere allegation of segregation; "It must be clear [from the complaint] that the 'punishments' complained of are not tied to a legitimate purpose[.]"). Plaintiff fails to state a constitutional claim related to this instance of solitary confinement.

        4.      Ruby Joyner, Jamie Johnson, Timothy Dial, Ms. Levy, and Mr. Hindsley

Plaintiff alleges that Jail Administrator Ruby Joyner blocked his PIN number "so the plaintiff could not call his lawyer"; placed Plaintiff on property restriction and lost all of his personal property, religious items, and "legal mail (discovery)" without compensation; ignored Plaintiff's grievances; and extended Plaintiff's stay in solitary confinement because of a pending lawsuit. (Doc. No. 1 at 7.) The alleged interference with phone calls by blocking Plaintiff's PIN number does not appear to have been an enduring obstacle to Plaintiff's telephone communication, as Plaintiff subsequently alleges that a different individual, Cpl. Bryant, interfered with his use of

the phone on another occasion. (*Id.* at 10.) Isolated occasions of interference with Plaintiff's phone privileges are insufficient to support a constitutional claim. *See Dewald v. McCallister*, No. 4:13CV-P6-M, 2013 WL 3280273, at *4 (W.D. Ky. June 27, 2013) ("With regard to phone restriction, an inmate has no right to unlimited telephone use.") (citing, *e.g.*, *Brown v. Long*, No. 96-5567, 1997 WL 63136, at *1 (6th Cir. Feb. 12, 1997) ("plaintiff [prisoner] has no constitutional right to unlimited access to a telephone, particularly during his confinement in segregation")).

The allegation that Defendant Joyner placed Plaintiff on property restriction and is therefore responsible for the loss of all his personal property does not state a claim to relief. "A prisoner's claim arising from the loss of personal property is not actionable under 42 U.S.C. § 1983, even if the loss was the result of intentional conduct," unless an adequate post-deprivation remedy is denied. *Waller v. Transcor America, LLC*, No. 3:07-0171, 2007 WL 3023827, at *5 (M.D. Tenn. Oct. 11, 2007) (internal citation omitted). Such a claim is properly advanced under the Due Process Clause of the Fourteenth Amendment, which protects against the unlawful taking of a person's property by public officers. However, the Supreme Court has held that, where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a cognizable due process claim. *Parratt v. Taylor*, 451 U.S. 527, 543–44 (1981), *overruled on other grounds by Daniel v. Williams*, 474 U.S. 327 (1986).

Thus, Plaintiff must plead and prove the inadequacy of state post-deprivation remedies if he is to recover for lost personal property. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995). Under settled Sixth Circuit law, a prisoner's failure to sustain this burden requires dismissal of his Section 1983 due process claim. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985). Here, Plaintiff has not sustained his burden. State post-deprivation remedies are available to him. The Sixth Circuit has held that Tennessee's statutory remedy against local governments

for loss of property affords an adequate remedy to return items either negligently or intentionally converted. *Id.* at 199. Plaintiff has not alleged that he attempted post-deprivation remedies and that they were inadequate. Thus, because there appear to be adequate state post-deprivation remedies available to Plaintiff, he fails to state a claim for loss of his personal property under the Fourteenth Amendment.

Plaintiff's allegation that his stay in solitary confinement was extended for an indeterminate length by Defendant Joyner "because of [a] pending lawsuit" is too vague and sparsely stated to support a retaliation claim, particularly as it is out of step with his subsequent allegation that the other Defendants who extended his solitary confinement did so "in retaliation [for a] Nov. 6, 2017 incident." (*Id.* at 11.) "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff has not sufficiently pled his engagement in protected conduct by alleging "[a] pending lawsuit,"[2] nor has he alleged any fact that would support a causal connection between the unidentified lawsuit and the extension of his segregation by Joyner. Plaintiff therefore fails to state a retaliation claim against this Defendant. *See Kensu v. Haigh*, 87 F.3d 172, 175–76 (6th Cir. 1996) (affirming dismissal of conclusory claim that actions against inmate were retaliatory). Defendant Joyner will be dismissed from this action.

---

[2]      The only lawsuit filed by Plaintiff in this District and pending at the time he filed the complaint under review here is *Shuler v. Doe, et al.*, No. 3:18-cv-00854 (M.D. Tenn.), in which he unsuccessfully challenged his arrest by Metropolitan Nashville Police detectives. He did not challenge the conditions of his confinement in that action.

In an affidavit-style addendum to his IFP application, Plaintiff states that he was taken to solitary confinement on November 6, 2017, after an altercation that resulted from an improper cell search by "new Corporal[s]" at the jail. (Doc. No. 2 at 9.) Plaintiff described the search, the altercation, and the aftermath as follows:

> On 11/06/17 New Corporal here at [the jail] named Cristopher Hughes and Derek Adam Berger Perform a cell search and took all my hygiene, food, legal documents, (Affidavit + pictures) pencils And a private picture of a female friend and thrown it in the trash[.] I tried to explain that they were wrong for throwing my personal property in the trash and the mail room approved of my photographs and to Please get the Sargent or Lt on deck[.] My request to speak with the SGT or Lt on deck was denied. . . . The Corporal then threatened me saying "Go back into my cell or we'll have to spray you and use force". Under complete duress because of this assault. Out of fear I began to defend myself. I was written up then taken to solitary confinement. I wrote grievance letter into which I stated I want to file charges[.] And was never answered. After 23 days I made a court appearance and told my lawyer and then I was taken to booking for added charges.

(*Id.* at 9–10.) Plaintiff alleges that Defendants Jamie Johnson, Timothy Dial, Ms. Levy, and Mr. Hindsley extended his stay in solitary confinement because of, or in retaliation for, this incident, "leaving Plaintiff to serve a total of 6 months in solitary confinement." (Doc. No. 1 at 8–9, 11.)

It is unclear at this point whether, as a matter of due process, the six-month duration of Plaintiff's solitary confinement in the wake of the incident described above was reasonably related to legitimate objectives such as maintaining security and order, or whether the alleged extension of this period carried it into the realm of punishment to which a pretrial detainee may not constitutionally be subjected. *Salerno*, 481 U.S. at 746 ("Pretrial detainees have a substantive due process right against restrictions that amount to punishment."). This due process claim will proceed for further development against Defendants Johnson,[3] Dial, Levy, and Hindsley.

---

[3]  Plaintiff's other charges against Defendant Johnson—failure to respond to grievances and loss of Plaintiff's personal property without compensation—fail to state a claim upon which relief may be granted, as previously explained by reference to other Defendants charged with these same

5. Sara Verdell

Plaintiff alleges that Defendant Verdell, the Program Director for Mental Health, placed him on a "Behavior Plan" that deprived him of his property, and otherwise "denied plaintiff help" after he complained of emotional distress on three dates in 2017 "through sick calls and the facilit[y's] grievance system." (Doc. No. 1 at 8.) Verdell is not alleged to have personally denied treatment to Plaintiff, or to have received his sick call requests or grievances. To the extent that Plaintiff's allegations implicate Verdell in alleged deliberate indifference to serious medical needs because of her supervisory role in the provision of mental healthcare at the jail, any such claim fails for lack of an allegation that Verdell was personally involved in the lack of care Plaintiff received at sick calls on the three dates in question. S*ee Miller*, 408 F.3d at 817 n.3 ("proof of personal involvement is required for a supervisor to incur personal liability" under Section 1983).

6. Debra Dixion and Ms. Hicks

Plaintiff alleges that these Defendants, both case managers, denied him access to the courts by not allowing him to use lawbooks or a tablet, and by keeping him from making calls to his attorney or copies of legal documents. (Doc. No. 1 at 8.) He claims that their failure to allow him to make copies of legal documents "kept Plaintiff from producing evidence on the face of the record to prove plaintiff was falsely imprisoned since 6/16/2017." (*Id.*) He does not specify whether such denial of access occurred only during the time he was in segregation, but his only request for relief that would address these alleged deprivations is his request for damages "against all Davidson County Sheriff's Officials mentioned in this lawsuit for the emotional injuries and

---

wrongs. As these are also the only two claims made against Defendant Mark McClure (Doc. No. 1 at 8), he will be dismissed from the action.

physical injuries sustained while being wrongfully kept for 6 months in solitary confinement[.]"
(*Id.* at 15.)

In *Pilgrim v. Littlefield*, 92 F.3d 413 (6th Cir. 1996), the Sixth Circuit discussed the requirements for stating a claim for denial of access to the courts, as follows:

> Prisoners have a right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). In order to state a claim for denial of meaningful access to the courts, however, plaintiffs must plead and prove prejudice stemming from the asserted violation. Plaintiffs must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. *Lewis v. Casey*, 518 U.S. 343, ——, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996).

*Id.* at 416. The *Pilgrim* court found that the claim before it had been properly dismissed because no "litigation-related detriment" had been alleged. *Id.*

In the case at bar, the only such detriment alleged is an inability to produce evidence establishing Plaintiff's false imprisonment, which the Court takes as a reference to Plaintiff's criminal defense since he does not make a false imprisonment claim before this Court. However, in his criminal case Plaintiff is represented by counsel, who is charged with marshaling any evidence that Plaintiff's custody is not lawful. There is no allegation that Plaintiff has been deprived of all communication with his attorney. Because Plaintiff has not alleged any prejudice resulting from the actions of Defendants Dixion and Hicks, he fails to state an access-to-courts claim against them. *Pilgrim*, 92 F.3d at 416.

### 7. W. Swarfford

Defendant Swarfford is identified in the complaint as "Supervisor – Records/OIS." (Doc. No. 1 at 9.) Plaintiff alleges that Swarfford failed to take corrective action "after [Plaintiff] exhaust[ed] the facility's grievance system of the tampering with and opening of plaintiff's legal mail." (*Id.*) However, "an allegation that a supervisor was aware of an actionable wrong committed

by a subordinate and failed to take corrective action 'is insufficient to impose liability on supervisory personnel under § 1983.'" *Proctor v. Applegate*, 661 F. Supp. 2d 743, 765 (E.D. Mich. 2009) (quoting *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir.1988)). Plaintiff thus fails to state a claim against Defendant Swarfford.

### 8. Clark Sargent

Plaintiff alleges that, during a search of his cell on an unspecified date when he was not present, Defendant Sargent went through and disposed of his property, including mail that was marked "Legal Mail." (Doc. No. 1 at 9.) Sargent is not alleged to have taken these actions in retaliation for any conduct of Plaintiff's, nor is there any allegation that the seizure and disposal of Plaintiff's "Legal mail (discovery)" prejudiced him by, e.g., hindering his ability to pursue a legal claim. *Pilgrim*, 92 F.3d at 416. Accordingly, Plaintiff fails to state a claim against Defendant Sargent.

### 9. Malcolm Meadows

Plaintiff alleges that, after he complained of severe and extreme chest pains, Defendant Meadows "lied on plaintiff and put Plaintiff in solitary confinement." (Doc. No. 1 at 9.) He also alleges that Meadows "brought Plaintiff out" with an inmate who Meadows knew had threatened Plaintiff, and told Plaintiff he hoped the inmate "kicks your ass." (*Id.*) Plaintiff does not specify when Meadows put him in solitary confinement, or whether this placement in solitary confinement after Plaintiff complained of chest pain was the same placement that he earlier attributed solely to Defendant Gentry. (*Id.* at 7.) As with the claim against Gentry, the claim against Meadows fails for lack of additional allegations concerning the length of time he spent in solitary confinement or suggesting that the segregation was punitive as opposed to administrative or medical. *See Ward*, 2018 WL 6238083, at *3 (stating that court is not required to infer punitive motive from mere

allegation of segregation; "It must be clear [from the complaint] that the 'punishments' complained of are not tied to a legitimate purpose[.]"). Furthermore, no constitutional claim can be made of the fact that Meadows "brought Plaintiff out" with a threatening inmate. This Defendant will be dismissed from the action.

### 10. Cristopher Hughes and Derek Adamberger

Plaintiff alleges that these Defendants conducted a cell search and disposed of Plaintiff's property, refusing his request to consult the sergeant or lieutenant on deck in the process. He further alleges that they threatened him with physical harm. (Doc. No. 1 at 9–10.) As discussed above, to the extent that Plaintiff claims loss of his personal property under the Fourteenth Amendment, there appear to be adequate state post-deprivation remedies available to him, and he therefore fails to state a claim upon which relief can be granted. *See Brooks*, 751 F.2d at 197. To the extent that he claims a violation of his right to access the courts due to the disposal of his "Legal Mail (Affidavit)" (*id.* at 9), he has failed to allege resulting prejudice as required to sustain such a claim. *Pilgrim*, 92 F.3d at 416. Defendants Hughes and Adamberger will be dismissed from the action.

### 11. Emilio Segarra and David Bryant

Plaintiff alleges that Defendant Segarra threatened to spray him in the face with chemical spray; threw Plaintiff's lunch on the floor and refused to get him new food; turned Plaintiff's water off for days, leaving him unable to flush the urine and fecal matter from his toilet; stated "I am not those two [corporals] from Nov. 6, 2017"; and "wrote Plaintiff up with false allegations." (Doc. No. 1 at 10.) He alleges that Defendant Bryant kept him from using the phone and, when Plaintiff reported his actions to a superior, skipped Plaintiff's cell when distributing a dinner meal. (*Id.*) These isolated incidents, while unpleasant, are alleged in conclusory fashion and do not warrant the inference that Plaintiff was subjected to punitive restrictions sufficient to support a

constitutional claim. *See Smith v. Copeland*, 87 F.3d 265, 268–69 (8th Cir. 1996) (finding that four days' exposure to an overflowed toilet containing human waste, without any alleged consequences of such exposure, "amounts to a *de minimis* imposition and thus does not implicate constitutional concerns," whether analyzed under 8th or 14th Amendment jurisprudence); *Marr v. Case*, No. 1:07-cv-823, 2008 WL 191326, at *3 (W.D. Mich. Jan. 18, 2008) ("Courts have consistently found that missing a single meal does not rise to the level of a constitutional violation."). Defendants Segarra and Bryant will be dismissed from this action.

### 12. Steven Smith and Trevor Mathews

Plaintiff alleges that, on an unspecified date, Defendants Smith and Mathews observed that Plaintiff's cell had been flooded with water and told him that they would clean it up later. (Doc. No. 1 at 10.) Plaintiff complained about the water for 2-3 hours, after which Smith and Mathews laughed and said that they would "get to it later." (*Id.*) Thereafter, Plaintiff fell asleep and when he awakened to use the restroom, he slipped in the water and fell. (*Id.*) He alleges that he regained consciousness when E.M.S. was tending to him and was rushed to the emergency room for treatment of back and head injuries. (*Id.*)

Plaintiff claims that Defendants Smith and Mathews were deliberately indifferent to his safety. However, "[c]ourts have regularly held that slip and fall accidents do not give rise to federal causes of action." *Davis v. Corr. Corp. of Am.*, No. 5:07CV279RS-EMT, 2008 WL 539057, at *3 (N.D. Fla. Feb. 22, 2008) (collecting cases). In *Bell v. Ward*, 88 F. App'x 125 (7th Cir. 2004), the Seventh Circuit Court of Appeals affirmed a district court's screening of a claim similar to the one at issue here, explaining as follows:

> To prevail on a constitutional claim that he was injured by the conditions of his confinement, a plaintiff must show that jail officials were aware of "a substantial risk of serious injury" but nevertheless failed to take appropriate steps to protect him. *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002). Negligence or even gross

14

negligence on the part of officials is not sufficient for liability; their actions must be intentional or criminally reckless. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Although a plaintiff need not plead the facts of his case in his complaint, if he does provide facts which show that officials were not deliberately indifferent, his complaint may be dismissed. *See Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 928 (7th Cir. 2003).

The condition that Bell attributes to the prison officials' oversight–the accumulation of water on the floor–did not present a substantial risk of serious injury. Although wet floors do present a possibility that inmates might slip, Bell's allegations do not suggest a substantial risk of serious harm that reflects the deliberate indifference required to impose liability under the Eighth Amendment. *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment."); *see also Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("an inch or two" of accumulated water in the shower not "an excessive risk to inmate health or safety"). In fact, Bell acknowledges that he and "other inmates of the wet area" had previously crossed the wet floor without slipping. At most, Bell has shown that jail officials were negligent, but negligence alone is not enough to support a claim of deliberate indifference. *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

*Bell*, 88 F. App'x at 127.

Here, as in *Bell*, Plaintiff's allegations against Defendants Smith and Mathews amount to a claim of negligence rather than deliberate indifference to his safety. These Defendants will therefore be dismissed from the action.

## B.     Denial of Medical Care

The remaining allegations of the complaint concern the medical care Plaintiff has received while incarcerated. He claims that the denial of appropriate medical care constituted cruel and unusual punishment in violation of his Eighth Amendment rights. As a pretrial detainee, Plaintiff is protected by the Fourteenth Amendment's Due Process Clause from conduct that the Eighth Amendment would prohibit as against "individuals who have been tried, convicted, and sentenced." *Richko v. Wayne Cnty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016); *see Garretson v. City of Madison Heights*, 407 F.3d 789, 795 (6th Cir. 2005) (stating that detainees' Fourteenth

Amendment right to adequate medical treatment is "analogous to the Eighth Amendment rights of prisoners.") "Eighth Amendment jurisprudence clearly establishes that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain that is violative of the Constitution." *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 105 (1976)) (internal quotation marks omitted). To succeed in bringing a deliberate indifference claim in the medical context, Plaintiff must allege the deprivation of a "sufficiently serious" medical need by a defendant who acted with a "sufficiently culpable state of mind." *Darrah*, 865 F.3d at 367–68 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013). The state of mind described by "deliberate indifference" is demonstrated not by mere medical negligence, but only when an official knows of and disregards an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 836–37. "[N]egligence or negligent medical treatment are not actionable theories of liability under 42 U.S.C. § 1983." *Boldon v. Claiborne Cnty. Det. Ctr.*, No. 3:16-CV-441-TWP-HBG, 2017 WL 4158612, at *6 (E.D. Tenn. Sept. 19, 2017) (citing *Daniels v. Williams*, 474 U.S. 327, 328–331 (1986) (finding that a "mere lack of due care" is not constitutionally actionable); *Estelle*, 429 U.S. at 106 (explaining that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner")).

1.      Amanda Buchanan (AHSA) and Melinda Stephens (HSA)

Plaintiff alleges that Defendants Buchanan and Stephens, who appear to be administrators over the provision of medical care in the jail, have failed to address his health concerns resulting

from the "malpractice and mis[-] or non[-]diagnosis as well as negligence from Dentist Kristal Lewis, Nurse practitioner Daneille Cullin and Dr. Kenneth Wilkens[.]" (Doc. No. 1 at 11.) However, under the authorities cited above, medical negligence is not actionable under Section 1983. Even if it were, Plaintiff could not establish the supervisory liability of Defendants Buchanan and Stephens based on their failure to act in response to his complaints about the care he received from medical personnel. *See Proctor v. Applegate*, 661 F. Supp. 2d 743, 765 (E.D. Mich. 2009) (quoting *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir.1988)). These Defendants will be dismissed from this action.

### 2. Kristal Lewis

Plaintiff alleges that Defendant Lewis, a dentist, sent him to Meharry General Hospital, presumably after assessing Plaintiff's dental needs, "with orders for them to pull the wrong tooth." (Doc. No. 1 at 12.) After Plaintiff "complained about the situation," he was written up for threatening behavior. (*Id.*) He alleges that Defendant Lewis, "out of retaliation left plaintiff with a painful abscessed tooth on the right side of his mouth for 7 month before pulling [the] tooth." (*Id.*) Although retaliatory motives are ascribed to Lewis, this allegation is properly analyzed as a deliberate indifference claim. However, consistent with Plaintiff's earlier description of the malpractice, misdiagnosis, and negligence of Defendant Lewis (*id.* at 11), the allegation that Lewis failed to promptly schedule the tooth extraction after being notified that her original order was in error does not state a deliberate indifference claim.

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Although Plaintiff alleges that he had to wait seven months before the tooth was

extracted, he does not allege that his dental condition was ignored altogether for seven months, nor does he allege any enduring dental symptoms as a result of the delay in extracting the tooth. He merely alleges that Dr. Lewis initially assessed his needs "after numerous complaints through the system's sick calls and grievances," and at some point thereafter ordered the extraction of the tooth. (Doc. No. 1 at 12.) "[N]either negligent medical care nor the delay in providing medical care can rise to the level of a constitutional violation absent specific allegations of sufficiently harmful acts or omissions establishing deliberate indifference." *Quiggins v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:10-CV-516-H, 2012 WL 4211208, at *5 (W.D. Ky. Sept. 18, 2012). Plaintiff's belief that extraction of the tooth was the only constitutionally adequate treatment does not make it so. *See id.* (finding treatment of tooth abscess with antibiotics and pain medication while awaiting extraction to be "medical care [that] is not so cursory as to amount to no treatment at all," but, at most, negligent treatment) (citation and internal quotation marks omitted). The allegations against Defendant Lewis are insufficient to support the inference that her medical care of Plaintiff's abscessed tooth was constitutionally deficient. This Defendant will be dismissed from the action.

### 3. Nurse Ashley Voller

Plaintiff alleges that Nurse Voller responded to an emergency call for attention to his complaint of extreme chest pain on April 3, 2018. Nurse Voller "accused plaintiff of theatricks and then lied in her report to have Plaintiff placed in solitary confinement." (Doc. No. 1 at 12.) The following day, Plaintiff was still complaining of extreme chest pain and was sent to the emergency room after the night nurse performed an EKG on him. (*Id.*) These allegations establish that Nurse Voller failed to undertake further assessment of Plaintiff's chest pain based on her conclusion that his complaints were not legitimate, and that her conclusion was subsequently

proved wrong when Plaintiff's complaints were deemed legitimate upon additional testing. However, "[a] medical decision not to order [diagnostic] measures [] does not represent cruel and unusual punishment," but, at most, medical malpractice. *Estelle*, 429 U.S. at 107; *see Knox v. Correct Care Sols.*, No. 2:16-CV-12683, 2016 WL 4362872, at *2 (E.D. Mich. Aug. 16, 2016). Nurse Voller may not be held to answer in this Section 1983 suit for her erroneous assessment or her negligent failure to appreciate the validity and seriousness of Plaintiff's symptoms, nor is any claim stated by the bare allegation that she lied in her report in order to have Plaintiff placed in solitary confinement. This Defendant will be dismissed from the action.

4. Daniell Cullin, Dr. Kenneth Wilkens, Hugheston Orthopedics, Dr. Cristopher P. Coughman, Meharry General Hospital, Dr. Motsen Bocker, Dr. Gaskin, Dr. Wilkins, Dr. Patrick Souris, and Dr. Zua

Plaintiff appears to allege that when he presented to Nurse Practitioner Cullin complaining of a variety of symptoms on multiple occasions, "nothing was done." (Doc. No. 1 at 12.) He alleges that the symptoms he reported ("extreme heartburn, chest pain, blurry vision, pain in lower left side of stomach, and constipation, as well as bleeding from the rectum and penis") were "due to too much of the wrong medication on 8-01-2017." (*Id.*) Plaintiff alleges that he "exhausted" the sick call procedure and the grievance procedure, but nothing was done. (*Id.*) He alleges that on November 10, 2017, he "passed out and woke up with a split on his head and a broken right hand and nothing was done." (*Id.*) He alleges that he still has pain and disfigurement in his hand because it was allowed to heal without treatment. (Id. at 12–13.)

However, Plaintiff alleges that he had multiple visits with Dr. Wilkens and informed him of all his problems, and that Dr. Wilkens "only kept adding on medication." (Doc. No. 1 at 13.) When Plaintiff informed Dr. Wilkens that his right hand was broken, Dr. Wilkens allegedly responded that "an MRI would be too expensive." (*Id.*) On December 16, 2017, Plaintiff was "sent

to general for hunger strike due to passing out and bleeding and broken hand," and a doctor there informed him that he "was passing out due to too much of the wrong medication." (*Id.*) Plaintiff was sent to Southern Hills Medical Center on February 6, 2018, when he was told that his liver was damaged due to too much medication. (*Id.*) Plaintiff claims malpractice, negligence, and constitutional violations resulting from the fact that "Dr. Kenneth Wilkens never provided plaintiff with information about the risk of medical treatment." (*Id.*) He alleges "misdiagnosis and/or non-diagnosis resulting from failure to exercise ordinary knowledge, skill, and care." (*Id.*)

Plaintiff was sent to Hugheston Orthopedics and Dr. Coughman on July 26, 2018, when x-rays and an MRI of his right hand were ordered. (Doc. No. 1 at 14.) He alleges that Dr. Coughman did not prescribe pain medication despite the knowledge that Plaintiff's hand had been broken and "healed back wrong," and that he declined to order an x-ray of Plaintiff's back despite Plaintiff's report of back pain since a fall in April 2018.

Plaintiff alleges that Meharry General and Drs. Bocker, Gaskin, Wilkins, Souris, and Zua "would not disclose any information and would not properly evaluate plaintiff in order to adjust and provide the proper medications." (*Id.*) He alleges "malpractice, misdiagnosis and/or nondiagnosis," and claims that these doctors never informed him of the risk of side effects from his medications. (*Id.*) He claims the failure of these "doctors from General . . . to exercise ordinary knowledge, skill, and care is a result of their deliberate indifference to plaintiff's health and safety." (*Id.*)

Plaintiff's claims against these Defendants clearly sound in negligence. Again, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment," courts are wary of constitutionalizing claims which are properly brought under state medical malpractice law. *Westlake*, 537 F.2d at 860 n.5. The Court will therefore dismiss

Plaintiff's medical care claims against all Defendants. In doing so, the Court does not express any opinion as to the viability or timeliness of those claims if filed as medical negligence claims in state court.

**IV.     Conclusion**

In light of the foregoing, the Court finds that Plaintiff has stated a non-frivolous due process claim against Defendants Johnson, Dial, Levy, and Hindsley, regarding their alleged extension of his solitary confinement for six months. Process shall issue on that claim.

An appropriate Order will enter.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE